UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STERLING SAVINGS BANK,<br><br>    Plaintiff,<br><br>    v.<br><br>AIR WISCONSIN AIRLINES CORPORATION,<br><br>    Defendant. | No. CV-05-071-FVS<br><br>ORDER |
| AIR WISCONSIN AIRLINES CORPORATION, a Delaware corporation,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>UNITED ENERGY, INC., an Oregon corporation,<br><br>    Defendant. | |

**THIS MATTER** comes before the Court based upon cross motions for summary judgment. Sterling Savings Bank is represented by Messrs. Leslie R. Weatherhead and Ryan M. Beaudoin. Air Wisconsin Airlines Corporation is represented by Mr. William D. Hyslop and Ms. Angel D. Rains.

ORDER - 1

**BACKGROUND**

United Energy, Inc., ("UEI") sold aviation fuel.  In order to maintain a steady flow of cash with which to finance its operation, UEI applied to Sterling Savings Bank ("Sterling") for a line of credit.  Sterling hired an independent company to prepare a report concerning UEI's finances.  The report, which is sometimes referred to as a collateral-examination report, provided Sterling with detailed information concerning UEI.  Sterling issued a line of credit to UEI during the Summer of 2002.  By January of 2003, Sterling had become concerned about the risk of default.  Sterling rated UEI as a "5" on a scale of 1 to 9, with "1" indicating little risk of default and "9" indicating extreme risk.  Despite the existence of "red flags," Sterling did not obtain a collateral-examination report on the anniversary of the issuance of the loan; an omission that was contrary to its policies.  In fact, Sterling more than doubled UEI's line of credit during the Fall of 2003.  The additional credit did not enable UEI to improve financially.  Indeed, during the first six months of 2004, Sterling's fear of default increased; so much so that by the Summer of 2004, high-ranking Sterling personnel were scrambling to devise a strategy to limit the bank's risk of loss.  Judging from the messages that they sent to each other, it appears that the strategy they settled upon was to keep advancing credit to UEI so that it could generate cash with which to repay its loan.

One of UEI's customers was United Aviation Fuels Corporation ("UAFC").  Sterling knew that UAFC paid in advance for the fuel that

it purchased from UEI.  Effective August 1, 2004, UAFC assigned its contract with UEI to Air Wisconsin Airlines Corporation ("AWAC").  Each week from July 30th until October 21st, AWAC wire-transferred a fuel payment to Sterling for UEI's benefit.  Sterling knew that these were advance payments.  They varied from fifty to sixty thousand dollars each.  Sterling credited each payment to a deposit account in which Sterling, but not AWAC, had perfected a security interest.  AWAC's 13 advance payments totaled $682,000.  During the same period, UEI delivered $71,924.95 worth of fuel to AWAC.  AWAC alleges that Sterling set off the difference -- $610,075.05 -- against the indebtedness UEI incurred pursuant to the line of credit.

   By the time AWAC realized that it had overpaid UEI, UEI no longer had enough money to refund the difference between AWAC's advance payments and the value of UEI's actual deliveries.  AWAC demanded that Sterling refund the difference.  Sterling refused; choosing, instead, to file an action in Spokane County (Washington) Superior Court seeking a declaration that it owes nothing to AWAC.  AWAC removed the dispute to federal court.  28 U.S.C. § 1446(a).  The Court has original jurisdiction because the two corporations are citizens of different states.  28 U.S.C. §§ 1441(b), 1332(a).

**RULING**

   Sterling suggests that the law of the State of Oregon may govern the parties' competing claims to AWAC's overpayments.  Since this is a diversity case, Sterling's suggestion must be analyzed according to the forum state's choice-of-law rules.  *389 Orange Street Partners v.*

ORDER - 3

*Arnold*, 179 F.3d 656, 661 (9th Cir.1999) (citations omitted).  One of them is that a court need not engage in choice-of-law analysis unless the law of another state actually conflicts with Washington law.  *See Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 210, 875 P.2d 1213 (1994). Actual conflict exists when the resolution of a dispute turns upon which state's law is applied.  *Seizer v. Sessions*, 132 Wn.2d 642, 648, 940 P.2d 261 (1997).  This is not such a case.  As a result, choice-of-law analysis is unnecessary.  *See Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 100, 864 P.2d 937 (1994) (state Supreme Court did not address choice-of-law dispute where the other state's interest was not "fundamentally incompatible" with Washington's).  Washington law controls.  *Id.* at 100-01.

    Both Sterling and AWAC move for summary judgment under Federal Rule of Civil Procedure 56.[1]  Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  A material fact is one "that might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact may be considered disputed if the evidence is such that a reasonable jury could find that the fact either existed or did

---

[1] While substantive matters are governed by the law of the State of Washington, procedural matters are governed by the Federal Rules of Civil Procedure.  *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996).

ORDER - 4

not exist. *See id.* at 249, 106 S.Ct. at 2511 ("all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury . . . to resolve the parties' differing versions of the truth" (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968))).

The parties indicate that AWAC paid UEI by means of "funds transfers." RCW 62A.4A-104(1). Consequently, it is appropriate to begin with Article 4A of the Uniform Commercial Code ("UCC"). *See Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274 (11th Cir.2003) (Ohio law) ("'[P]arties whose conflict arises out of a funds transfer should look first and foremost to Article 4-A for guidance in bringing and resolving their claims . . . .'" (quoting *Sheerbonnet, Ltd. v. Am. Express Bank, Ltd.*, 951 F.Supp. 403, 407 (S.D.N.Y.1995))); 2 Clark & Clark, *Law of Bank Deposits, Collections and Credit Cards*, ¶ 17.02 at 17-5 (Revised Ed.2006).

A funds transfer typically consists of a series of transactions, RCW 62A.4A-104(1), the purpose of which is to enable the "originator," RCW 62A.4A-104(3), who is also referred to as the "sender," RCW 62A.4A-103(1)(e), to make a payment to the "beneficiary," RCW 62A.4A-103(1)(b). The sender initiates the process by issuing a "payment order." RCW 62A.4A-103(1)(a). When the "beneficiary's bank," RCW 62A.4A-103(1)(c), accepts the payment order, title to the payment passes to the bank, *Regions Bank*, 345 F.3d at 1277, which credits the beneficiary's account with the sum indicated. RCW 62A.4A-502(3)(a).

ORDER - 5

If the beneficiary is indebted to the bank, the bank may set off that sum against the beneficiary's indebtedness. *Id.*

A bank's authority to set off funds pursuant to RCW 62A.4A-502(3)(a) is subject to those common-law restrictions that are consistent with the rights, duties, and liabilities set forth in Article 4A. *See Regions Bank*, 345 F.3d at 1275-76. *Cf. Syrovy v. Alpine Resources*, 122 Wn.2d 544, 549, 859 P.2d 51 (1993) (common-law definition controlled where Article 2 was silent (quoting RCW 62A.1-103 ("Unless displaced by the particular provisions of this Title, the principles of law and equity . . . shall supplement its provisions."))). Relying upon this principle, AWAC seeks to invoke two common-law restrictions upon Sterling's right of set-off. One is based upon the law of bank deposits. The other is based upon the Restatement (First) of Restitution (1937).

Under the common law of the State of Washington, a bank deposit is either general or special. *Washington Shoe Mfg. Co. v. Duke*, 126 Wash. 510, 514, 218 P. 232 (1923) ("*Washington Shoe*"); *Carlson v. Kies*, 75 Wash. 171, 174, 134 P. 808 (1913). A deposit is presumed to be general. *Washington Shoe*, 126 Wash. at 515. However, if a depositor asks a bank to accept a deposit for a specific purpose, and the bank agrees to the request, the deposit is a special deposit. *Id.* at 514.

Title to a general deposit passes to the bank and the bank becomes a debtor of the depositor. *Washington Shoe*, 126 Wash. at 514. A special deposit is a different matter. Unlike a general deposit,

ORDER - 6

title to a special deposit does not pass to the bank.  *Hitt Fireworks Co. v. Scandinavian American Bank*, 114 Wash. 167, 172, 195 P. 13, 196 P. 629 (1921) ("*Hitt*").  Instead, "the bank becomes a trustee and holds the money in a fiduciary capacity." *Id*.

A depositor who makes a general deposit may owe a separate debt to the bank.  In such instances, the depositor and the bank are mutually indebted.  If the depositor's debt to the bank has matured (*i.e.*, the depositor is in default), the bank may exercise its right of "set-off."  *In re Estate of Adler*, 116 Wash. 484, 489, 199 P. 762 (1921); *Conner v. First Nat'l Bank of Sedro-Woolley*, 113 Wash. 662, 665, 194 P. 562 (1921).  This means "the bank may apply the deposit, or such portion thereof as may be necessary, to the payment of the debt due it by the depositor[.]"  *Conner*, 113 Wash. at 666.

AWAC contends that its advance payments were special deposits.  This contention is not supported by the record.  AWAC never indicated to Sterling that its payments were being made for a special purpose.  *Cf. Carlson*, 75 Wash. at 172 (estate administrator advised cashier that he was depositing money for the benefit of heirs).  Nor did the character of UEI's account suggest that the funds were set aside for a special purpose.  *Cf. Westview Investments, Ltd. v. U.S. Bank National Ass'n*, 133 Wn. App. 835, 850, 138 P.3d 638 (2006) ("*Westview*") (plaintiffs submitted evidence indicating that a bank knew the account holder "was a general contractor and that most of its accounts receivable were payments made by property owners for the benefit of subcontractors").  Finally, Sterling never promised to hold AWAC's

ORDER - 7

payments in trust pending reconciliation of payments and fuel deliveries. *Cf. Hitt*, 114 Wash. at 172-73 (cashier gave assurances to depositor).[2] Given the absence of evidence from which a reasonable jury could find that AWAC's advance payments were special deposits, the jury would be constrained to find that they were general deposits. Their status as general deposits did not change thereafter. *See Carl v. Republic Security Bank*, 282 F.Supp.2d 1358, 1370 (S.D.Fla.2003) (Florida law).

Sterling argues that, when a buyer makes an advance payment to a seller by means of a general deposit, title to the deposit passes to the seller's bank and the bank is entitled to set off the deposit against the seller's indebtedness to the bank. As support for its argument, Sterling cites *Aebig v. Commercial Bank of Seattle*, 36 Wn. App. 477, 674 P.2d 696 (1984), among other authorities. In *Aebig*, customers of a travel agency submitted advance payments to the agency

---

[2]This is not an exhaustive list. For example, in *Westview*, a general contractor allegedly promised property owners that it would hold their progress payments for the benefit of suppliers and subcontractors. 133 Wn. App. at 845-49. The owners deposited their payments in the general contractor's bank account. Depending upon what the bank knew when the payments were made, the owners' funds transfers may have been special deposits. *Cf. Carl v. Republic Security Bank*, 282 F.Supp.2d 1358, 1369 (S.D.Fla.2003) ("funds deposited into a [bank] customer's account may constitute a special deposit . . . based on an agreement between the bank customer and a third party when the bank is informed *prior to the depositing of funds* that the funds are to be used to pay specific creditors" (emphasis added) (citation omitted)).

ORDER - 8

prior to embarking on tours.  *Id.* at 478.  The agency's customers imposed no restrictions upon the agency's use of their advance payments.  The agency deposited the payments in a bank account and used the money to operate its business.  On those facts, the Washington Court of Appeals held that the agency was not a trustee of its customers' advance payments.  *Id.* at 480.  Title passed to the agency's bank.  *See id.*  The bank was entitled to set off the customers' advance payments against the agency's debt to the bank.  *Id.*

There is no indication in *Aebig* that the customers overpaid the travel agency.  Here, by contrast, AWAC's advance payments exceeded the value of the fuel UEI delivered.  AWAC argues that title to an overpayment does not pass to the seller.  As support for its argument, AWAC cites *Watkins v. Gorlick*, 52 Wn.2d 95, 323 P.2d 649 (1958) ("*Gorlick*"), among other authorities.  There, a buyer mistakenly paid too much for certain goods.  *Id.* at 97-98.  The seller refunded the buyer's overpayments less than four months before applying for the appointment of a receiver.  *Id.*  The receiver sought to recover the refunds from the buyer on the ground that the refunds were preferences.  *Id.* at 96.  Resolution of the receiver's request depended upon whether title to the buyer's overpayments passed to the seller.  *Id.* at 98.  The Washington Supreme Court ruled that title did not pass because, under the Restatement, *supra*, § 20, the seller held the overpayments subject to a constructive trust.  52 Wn.2d at 98.

On occasion, a person transfers property that is subject to a

constructive trust to a third person. The Restatement addresses this contingency. "Where property is held by one person upon a constructive trust for another, and the former transfers the property to a third person who is not a bona fide purchaser, the interest of the beneficiary is not cut off[.]" Restatement, *supra*, § 160, comment g. Depending upon the circumstances, the beneficiary may pursue legal or equitable remedies. *Id.*

The facts of this case do not fit neatly into the preceding framework. AWAC made weekly payments; UEI made weekly fuel deliveries. AWAC's weekly payment was not an overpayment when AWAC made it. It became an overpayment, potentially subject to a constructive trust, only when UEI failed to deliver a quantity of fuel which matched the amount AWAC paid that week. However, by the time a constructive trust could have arisen, title to the payment had passed to Sterling. This, then, is a situation in which a buyer is seeking restitution from a third person who obtained title to each of the buyer's payments to the seller before the payment became the subject of a constructive trust.

The Supreme Court of the State of Washington has not addressed a case like this. Thus, this Court must interpret state law as it believes the Washington Supreme Court would. *See Dias v. Elique*, 436 F.3d 1125, 1129 (9th Cir.2006); *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir.2003). In doing so, this Court may rely upon "intermediate appellate court decisions, statutes, and decisions from other jurisdictions[.]" 323 F.3d at 1222.

ORDER - 10

The Court assumes, for purposes of argument, that the Restatement (First) of Restitution is potentially applicable here.  As a result, the Court must determine whether AWAC is eligible for relief under its provisions.

AWAC seeks restitution under § 20 of the Restatement, which was adopted by the Washington Supreme Court in *Gorlick*.  52 Wn.2d at 98. Section 20 provides:

> A person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty, for the performance of a condition, or for the acceptance of an offer, is entitled to restitution of the excess.

Restatement, *supra*, § 20.  The right of restitution conferred by § 20 is subject to limitations.  For example, a buyer may not obtain restitution from a third person who qualifies as a bona fide purchaser.  *Id.* § 20, comment a.  The term "bona fide purchaser" is defined by § 13:

> A person who has entered into a transaction with another under such circumstances that, because of a mistake, he would be entitled to restitution from the other,
>   (a) is not entitled to restitution from a third person who has received title to or a legal interest in the subject matter either from the other or from the transferor at the direction of the other, and *has given value therefor without notice of the circumstances*[.]

(Emphasis added.)  Although the Washington Supreme Court has not adopted § 13, existing law is in accord.  *See, e.g., Biles-Coleman Lumber Co. v. Lesamiz*, 49 Wn.2d 436, 439, 302 P.2d 198 (1956) ("bona fide purchaser for value is one (a) who has had no notice of the claim

ORDER - 11

of another's right to or equity in the property prior to his acquisition of title, and (b) who has paid the vendor a valuable consideration"). Consequently, it is likely that the Washington Supreme Court will adopt § 13 when the occasion arises.

In order to qualify as a bona fide purchaser, Sterling must prove that it gave value to UEI without notice of circumstances creating a constructive trust. Restatement, *supra*, § 13(a). The first element (*i.e.*, "value") is not in dispute. Sterling loaned money to UEI. A loan constitutes "value" for purpose of bona fide purchaser doctrine. *In re Smith*, 93 Wn. App. 282, 286-87, 968 P.2d 904 (1998), *review denied*, 137 Wn.2d 1033 (1999). *See also* Restatement, *supra*, § 173, comment n. The second element (*i.e.*, "notice") is sharply disputed. AWAC argues that Sterling should have known that it was overpaying UEI and, thus, that UEI held its overpayments subject to a constructive trust.

The Restatement provides that "a person has notice of facts giving rise to a constructive trust if he knows the facts or should know them." Restatement, *supra*, § 174. The phrase "should know" means that the person "knows facts which would lead a reasonably intelligent and diligent person to inquire whether there are circumstances which would give rise to a constructive trust, and if such inquiry when pursued with reasonable intelligence and diligence would give him knowledge or reason to know of such circumstances." *Id.* § 174, comment a. As Sterling observes, the Restatement imposes a stricter standard when the request for restitution arises from the

ORDER - 12

transfer of a negotiable instrument.  In such instances, a person's negligent failure to inquire about the existence of a constructive trust is not enough to charge him with notice.  *Id.* § 174, comment c.  The issue is whether "he acted in bad faith."  *Id.*

The Washington Supreme Court has not decided whether the standard for negotiable instruments (UCC Article 3) also applies to funds transfers (UCC Article 4A).  However, in a case involving funds transfers, the Washington Court of Appeals adopted a standard similar to the one set forth in comment a to § 174.  *Westview*, 133 Wn. App. at 849-50 (a bank may not "'set off a third person's sums in its debtor's account against the debtor's obligation to it'" if, at the time the funds transfer occurred, the bank was aware of facts that would have prompted "a reasonably intelligent and diligent person" to inquire concerning title to the third person's sums (quoting B.C. Ricketts, *Bank's Right to Apply Third Person Funds, Deposited in Debtor's Name, on Debtor's Obligation*, 8 A.L.R.3d 235 § 2 (1966))).

Under either standard, a reasonable jury would be unable to find that Sterling should have known about the existence of a constructive trust.  To begin with, nothing in the relationship between UEI and UAFC (the company that preceded AWAC) indicated that overpayments were likely.  UAFC had made advance payments for some time.  UAFC's payments and UEI's deliveries had corresponded closely.  Nor can a duty be inferred from the fact that, over the years, Sterling acquired a significant amount of financial information about UEI.  While Sterling knew that AWAC was paying in advance for the delivery of

ORDER - 13

fuel, there is no evidence that Sterling knew the number of gallons that UEI was delivering each week and the price that AWAC was paying per gallon. Without this information, Sterling could not have known that AWAC was overpaying UEI. AWAC submits that Sterling should have obtained additional collateral-examination reports. Perhaps so; but Sterling's failure to do so is relevant only if additional reports would have uncovered both price and quantity. As the record now stands, there is no reason to think that additional reports would have uncovered this information. Finally, AWAC took no steps prior to making advance payments that would have alerted Sterling to its legitimate business concerns. For one thing, AWAC could have provided instructions to Sterling with respect to the disposition of its advance payments and asked Sterling to agree to comply with its instructions. RCW 62A.9A-104(a)(2). For another thing, AWAC could have asked to become Sterling's customer with respect to UEI's deposit account. RCW 62A.9A-104(a)(3). Rather than making these requests, AWAC was content to allow UEI to commingle its advance payments with other money that flowed into the account and to use all of the money to operate its business.

    In conclusion, Sterling qualifies as a bona fide purchaser. Restatement, *supra*, § 13(a). The rule of restitution set forth in § 20 is inapplicable. *See id.* § 172. Instead, the dispute concerning ownership of AWAC's overpayments is governed by Article 4A, as supplemented by the law of bank deposits. AWAC's advance payments were general deposits. *See Aebig*, 36 Wn. App. at 480. Since Sterling

ORDER - 14

lacked information indicating that AWAC was overpaying UEI, title to AWAC's payments passed to Sterling when it accepted AWAC's payment orders. *See Regions Bank*, 345 F.3d at 1277. Furthermore, since UEI was indebted to Sterling and its indebtedness had matured, Sterling was authorized to set off AWAC's advance payments against UEI's indebtedness. RCW 62A.4A-502(3)(a). Consequently, Sterling is not obligated to return the money ($610,075.05) that AWAC overpaid UEI for aviation fuel during the Summer and Fall of 2004.

**IT IS HEREBY ORDERED:**

1. AWAC's motion for summary judgment (**Ct. Rec. 129**) is denied.

2. Sterling's motion for summary judgment (**Ct. Rec. 114**) is granted.

3. AWAC's motion to strike (**Ct. Rec. 125**) is denied as moot.

4. Sterling's motion to strike (**Ct. Rec. 138**) is denied as moot.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this order, enter judgment accordingly, furnish copies to counsel, and close the case.

**DATED** this ___8th___ day of May, 2007.

                            s/ Fred Van Sickle
                              Fred Van Sickle
                    United States District Judge